RAWLS, JOHN S., Associate Judge.
In this suit for divorce instituted by appellant wife, the chancellor entered a final decree of divorce in her favor and against the defendant. This is about the only part of said decree with which she is satisfied. Appellant now asserts error on the part of the chancellor in the following particulars: (1) in decreeing partition of the home which was held as an estate by the entirety on the ground that requisite pleadings had not been filed, (2) in decreeing a lien on said home in favor of a person not a party to the suit, and (3) in failing to grant to her alimony, or at least the use of the home of the parties.
Essential facts are: Plaintiff wife and defendant husband were married on December 2, 1951. It was the third marital venture for the plaintiff and the second for defendant. Plaintiff brought into the marriage four children — two by her first husband and two by her second husband— whose respective ages were 13, 11, 7 and 4 and they all moved into a home owned by the husband prior to the marriage. The husband adopted the two younger children and assisted in rearing them. About five years prior to the wife’s instituting the divorce suit, the parties constructed a new home, which is referred to as the “Houle Avenue House.” The sources of funds for construction of the new home which cost approximately $19,500.00 were: (1) $7,900.00 from sale of the home owned by the husband at the time of the marriage, (2) $9,000.00 borrowed by the husband from his aunt, a Mrs. Kelly, which loan was evidenced by a promissory note signed by the husband and referred to by the parties as the “Kelly loan” and (3) the balance from joint savings of the parties.
In his final decree, the chancellor, inter alia, approved and confirmed the division the parties had made between themselves of all personal property accumulated during their marriage; found that the older adopted child was nineteen years of age and self-supporting and awarded custody of the younger child to the wife and required the husband to pay support in the sum of $10.00 per week until July 15, 1964 (on which date the younger child would be 18 years of age) ; found that the wife has a responsible position with a local bank, is earning an income adequate to support herself and is not entitled to any alimony; and found that the Houle Avenue house was acquired and improved with funds received *434 from Mrs. Mattie Kate Kelly in the amount of $9,000.00, monies realized from the sale of a house owned by the husband prior to this marriage and the balance from joint funds of the parties; that the Kelly loan was made to both parties with the express knowledge that' the proceeds were to be used to build the Houle Avenue home; that both parties treated and accepted the Kelly proceeds as a loan to the both of them for the express purpose of acquiring a marital home; and that they are jointly liable for said Kelly loan. The Court then found that the pleadings were sufficient to invoke its jurisdiction in decreeing partition, granted the parties 180 days to work out an equitable sale of the Houle Avenue property or alternatively an equitable way of repaying the joint debt to Kelly, and should the parties fail to either voluntarily sell or arrange repayment during such period, ordered a judicial sale of the property.
It is well settled that divorce destroys an estate by the entirety and transforms the husband and wife into joint tenants or tenants in common. In that relationship each party generally has an equal undivided interest and either may seek partition after divorce provided it would not conflict with the divorce decree.[1] Partition is also a proper subject to be adjudicated in a divorce proceeding when the chancellor has by appropriate pleadings acquired actual jurisdiction. In Fields v. Fields,[2] involving a bill of complaint analogous to the one in the instant cause, wherein the wife sued for divorce, permanent alimony, suit money, and partition of a home owned by the estate by the entirety, the court held:
“It would not be difficult to generate two law suits from the situation but the divorce, the title to the home, the matter of alimony and the matter of restitution are all so involved that the same evidence may have to do with each of them so there is every reason why they should be adjudicated in one suit and we are shown no reason why they should not be considered together.”
 Plere, the initial complaint filed by plaintiff did not pray for partition; this subject arose upon the counterclaim of the defendant, and this counterclaim was technically deficient in two vital respects. It was not sworn to by the complainant, and it did not describe the subject property by metes and bounds, or other appropriate description, as required by the statute. As to the first requisite, the Supreme Court of Florida held in Beverette v. Graham,[3] that a bill of complaint not sworn to by complainant is insufficient to invoke the jurisdiction of the court in partition proceedings. However, a reversal of this cause does not preclude the chancellor upon remand from permitting the filing of appropriate pleadings complying with the statutory requisites for partition and then proceeding thereon to final judgment.[4]
Appellant’s second contention that the chancellor decreed a lien on the Houle Avenue property in favor of a person not a party to the suit is not supported by the specific provisions of the decree. The chancellor in determining property rights incident to divorce did reach the conclusion that “ * * * between plaintiff wife and defendant husband that they are jointly liable for said loan, * * * ” and as an incident to partition he did provide for repayment of the loan from the proceeds of the sale of the home should such sale become necessary. The essence of the findings in the decree was to the effect that the building of the home was made possible by the loan and that some equitable adjustment must be employed to prevent unjust *435 enrichment to the wife upon partition of that property. The record contains sufficient evidence to justify that conclusion, though we find that the method employed by the chancellor is erroneous in some respects.
We find that the chancellor erred in decreeing that the loan was the obligation of both parties. The controversial loan was initiated, agreed upon, and evidenced as a result of dealings between defendant and Mrs. Kelly. This record does not reflect any solicitation of the loan on the part of plaintiff from Mrs. Kelly nor does it show any promises of repayment, oral or written, made by plaintiff to Mrs. Kelly. The repayment of the loan was a matter solely between defendant and Mrs. Kelly.
We next consider that portion of the decree which provided that if sale by a special master becomes necessary, the proceeds would be used to discharge the loan before the balance was divided equally between the parties. The inherent right of a chancellor in a divorce action to adjudicate the parties’ equitable interests in property acquired during coverture has been consistently upheld. In Meloche v. Meloche [5] the Supreme Court held:
“Property rights existing between husband and wife may be' appropriate subjects of litigation in divorce proceedings when not a violation of law. Such rights have been adjudicated in this state as incidents to divorce, where not expressly or impliedly forbidden by any law or public policy and the record as made warranted such equitable procedure with consequent decree. See Carlton v. Carlton, 78 Fla. 252, 83 So. 87; Lowrie v. Lowrie, 92 Fla. 337, 111 So. 288; Taylor v. Taylor [100 Fla. 1009], 130 So. 713.”
We are of the view that here the chancellor in adjudicating the property rights of the Burnses could have found a special equitable interest in the property in favor of the husband. The term “Special Equity” seemingly was first used by our Supreme Court in Carlton v. Carlton,[6] wherein the court concluded that since the wife had generously contributed in funds and by her personal exertion and industry through a long period of time to the acquisition and establishment of her husband’s fortune, she possessed a “special equity” in the property which she aided in acquiring and preserving. It is significant that the reversal directed the chancellor to award her a reasonable allowance for maintenance and support, so apparently the term was initially used with reference to the award of alimony. However, the term “special equity” as applied in divorce proceedings acquired a different concept in Heath v. Heath.[7] There, the chancellor granted a divorce in favor of the husband on the ground of adultery and also decreed that the wife should be paid the sum of $2,000.00 for her equitable interest in her husband’s business. The Supreme Court in affirming held that: “The provisions of section 4987, Comp.Gen.Laws * * *[8] to the effect that no alimony shall be granted to an adulterous wife, do not preclude the ascertainment and allowance by the court of an amount to the wife for her special equity in property and business of the husband toward which she is shown to have contributed materially in funds and industry through a period of years while the marriage remained undissolved.” The distinction between the two principles was recognized in Dupree v. Dupree[9] wherein it was held that alimony concerned things to eat and wear and ran against the husband, but that a special equity pertained to a part *436 of the husband’s property. Thus, it has been the well-settled rule since Heath that a wife may acquire a special equity in her husband’s property as a distinct claim separate and apart from her claim for alimony. That the husband has a reciprocal right is not so well settled. However, such a conclusion is not without authority.
Of special significance is the case of Francis v. Francis [10] wherein plaintiff wife held legal title to the “home place” which had been substantially improved through the efforts of the husband. Although the chancellor found that the wife had paid the major portion of the purchase price, it had been agreed between the husband and the wife that the property should be the property of both, and relying on that agreement defendant husband substantially improved the property out of his own funds. The Supreme Court in approving the chancellor’s decree vesting the property in the parties as an estate by the entirety prior to the decree of divorce, held:
“It is well settled that property right existing between husband and wife may be appropriate subject of litigation in divorce proceedings when not in violation of the law.”
Although not labeled as such, it is apparent that the chancellor in Francis found a “special equity” arising in favor of the husband because of facts similar to those in the instant case.
The general principles of equity also support such a conclusion. Here, plaintiff wife sought the aid of a court of equity in asking for a decree of divorce, which she received; now, she wants to profit therefrom according to strict principles of law. Our Supreme Court has consistently applied equitable maxims to property rights in divorce cases as is evidenced by the following statements in Engebretsen v. Engebretsen,[11] viz.: “The appellee sought the aid of a court of equity for the adjudication of his marital differences. One maxim of equity is that a litigant going into equity must go with clean hands, and another is that he who seeks equity must do equity.”
It is obvious that the chancellor had these elementary equitable maxims in mind when he entered the instant decree. However, established routes to judicial relief must be followed in reaching the ultimate end, and it is in this area we conclude that the chancellor erred, viz.: (1) By holding that both parties are jointly liable on the Kelly loan, (2) In ordering payment of the Kelly loan out of the proceeds of a sale of the property therein described in the event same was sold by a special master, and (3) In ordering partition on the insufficient pleadings. We recognize that the practical result of our decision might well amount to the same as the end result contemplated by the chancellor; but an orderly system.of jurisdiction compels us to conclude that the chancellor should have found that the husband had a special equity in the Houle Avenue property in an amount equal to the unpaid principal and interest on the Kelly note.
The cause is remanded with directions to the chancellor to:
1. Find a special equity in favor of the husband in the Houle Avenue property in an amount equivalent to the unpaid principal and interest on the Kelly loan, and
2. To permit either cotenant to amend the pleadings for partition of their properties.
Save for the foregoing, the chancellor’s decree is affirmed in every respect.
Affirmed in part and reversed in part with directions.
SMITH, C. J., and SHANNON, J., concur.

. Fisher v. Davenport, Fla.1956, 84 So.2d 910.

. Fields v. Fields, 1948, 160 Fla. 561, 35 So.2d 722.

. Beverette v. Graham, 1931, 101 Fla. 563, 132 So. 826.

. Gonzalez v. Gonzalez, (Fla.App.3d, 1963), 156 So.2d 206 and Banfi v. Banfi, (Fla.App.3d, 1960), 123 So.2d 52.

. Meloche v. Meloche, 1931, 101 Fla. 659, 133 So. 339, 140 So. 319.

. Carlton v. Carlton, 1919, 78 Fla. 252, 83 So. 87.

. Heath v. Heath, 1932, 103 Fla. 1071, 138 So. 796, 82 A.L.R. 537.

. Now Section 65.08, Florida Statutes, F.S.A.

. Dupree v. Dupree, 1945, 156 Fla. 455, 23 So.2d 554.

. Francis v. Francis, 1938, 133 Fla. 495, 182 So. 833, 834.

. Engebretsen v. Engebretsen, 1942, 151 Fla. 372, 11 So.2d 322.