**Lillian H. BOSCH, Plaintiff-Appellee,**

**v.**

**UNITED STATES of America, Defendant-Appellant.**

**No. 76–4144.**

United States Court of Appeals, Fifth Circuit.

Feb. 26, 1979.

---

John L. Briggs, U. S. Atty., Jacksonville, Fla., Eleanore J. Hill, Asst. U. S. Atty., Tampa, Fla., Myron C. Baum, Acting Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., Gilbert E. Andrews, Chief, Jonathan S. Cohen, Atty., Arthur L. Bailey, Atty., R. Bruce Johnson, Appellate Section, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Frank J. Holroyd, Jr., Sarasota, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, TUTTLE and HILL, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal challenges the correctness of the trial court's determination of the taxpayer's basis in land which she acquired pursuant to a Florida divorce decree and which she sold during the tax years in question. The basis approved by the trial court was the fair market value of the land on the date of the transfer to her some five years after the taxpayer obtained the divorce from her husband. The United States contends that the basis should be the actual cost of the land to the husband when it was acquired during the marriage.

The facts are not in dispute. During her marriage to her former husband, the taxpayer advanced $115,144.50 of her own funds to her husband for use in improving approximately 3500 acres of land, title to which was in her husband's name. On the basis of this financial contribution, the Florida divorce court recognized a "special equity" which the taxpayer held in the improved land.

The court's decree included the following finding:

> That the defendant [husband] is the owner of approximately 3500 acres of land, which is in the name of the defendant solely, but which have been managed and improved by the use of the plaintiff's money, and in which the plaintiff has a special equity.

The decree, based on this and other findings, contained the following provision: "The plaintiff is entitled to and is hereby awarded a one-third interest in and to approximately 3500 acres of land in Pasco County, Florida, title to which is in the name of the defendant alone." [1] The court retained jurisdiction over the suit until the children should become of age and "for the purpose of partitioning the real property which is owned by each and both of the parties hereto." Five years later, the court entered an order actually partitioning the land between the former husband and wife.

Having sold 175 acres of this land during the tax years in question, the taxpayer

---

1. The decree also made other awards, such as the family automobile and certain furnishings and furniture, generally in the nature of alimony, and a certain amount for child support.

claimed as her basis in the land the fair market value on the date of the final decree.[2] The taxpayer returned as gain on the sale the difference between the fair market value on the date of final partition and the sales price. She paid the amount of an additional assessment based on the government's theory, and then filed her suit for a refund.

The trial court, relying upon *United States v. Davis,* 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), agreed with the taxpayer, holding that "a special equity may ultimately result in the ownership of some of the husband's property but this does not equate the [divorce court decree] with a division of property by co-owners, 370 U.S. at 71, 82 S.Ct. 1190."

As was true in *Davis,* a determination of the correct basis of the 1142 acres of Mrs. Bosch's land depends upon whether the state court decree assigning it to her at the time of the divorce was a taxable event as to the husband's ownership in the land. Simply stated, if the court decree represented a tradeoff of the wife's claimed marital rights for the one-third interest in the 3500 acre tract, then under the Supreme Court's decision in *Davis,* this would be a taxable event to the husband, and the wife's basis would be the fair market value of the land on the date of the decree. If, on the other hand, the court's judgment amounted to a decree awarding to the wife an interest in property which existed prior to the divorce, the basis would be the original cost to the husband when he acquired the land.

The parties agree that the question whether this decree was a division of property interests between the parties or was an award in lieu of alimony is to be resolved by reference to state law. Florida has long recognized a "special equity" in a wife where she has made identifiable contributions to her husband's property during marriage even though the special equity only comes into actual identifiable form upon the termination of the marriage status. This special type of interest favoring a wife seems to have been a development during the years when the common law prevailed to the extent that on marriage all of the wife's property automatically became her husband's and, in the event of a divorce in which the wife was the guilty party, she was cast adrift with no right to alimony.

It cannot be questioned that in the development of this species of property the Florida courts have considered the right of the wife who contributed substantially to her husband's estate during marriage as a "vested" right. This was made clear in *Heath v. Heath,* 103 Fla. 1071, 138 So. 796 (1932), in which it was also made clear that there is a distinction between such a special equity and alimony. In the *Heath* case, the husband was awarded a divorce on the ground of his wife's adultery, but the trial court awarded the wife $2,000 for her equitable interest in the husband's business and property although at that time the award could not have been made as alimony because a Florida statute specifically prohibited the award of alimony to an adulterous wife. 2 Comp.L.Fla. § 1932 (1914). In *Heath,* the Florida Supreme Court said:

> There is undoubt[ed] proof that the wife materially assisted the husband in the conduct of his business of operating a chain of stores and that she put into her husband's business a substantial amount of her own capital in addition to what personal services she rendered. Whatever consequences the wife may be compelled under the law to suffer for her marital derelictions by the severance of the bonds of matrimony, she is not required to incur the forfeiture of any of her *already vested* equitable property rights which were acquired by her while the matrimonial barque was sailing on smoother seas. See *Carlton v. Carlton,* 78 Fla. 252, 83 So. 87; *Taylor v. Taylor,* 100 Fla. 1009, 130 So. 713.

**2.** At oral argument, the taxpayer conceded the government's position that even if the divorce decree was the "taxable event" with reference to which the market value should be determined, then it was that date, rather than the date of the partitioning decree as to which the fair market value determination was to be made.

The provisions of section 4987, Comp. Gen.Laws, section 3195, Rev.Gen.St. to the effect that no alimony shall be granted to an adulterous wife, do not preclude the ascertainment and allowance by the court of an amount to the wife for her special equity in property and business of the husband toward which she is shown to have contributed materially in funds and industry through a period of years while the marriage remained undissolved.

Such an allowance is not alimony and should never be made in any case unless shown to be warranted by special facts and circumstances which support a finding of an equity in the husband's property arising in favor of the wife from contributions of funds and services made by her toward its accumulation over, above, and beyond the performance of ordinary marital duties toward the husband.

103 Fla. at 1075, 138 So. at 797 (emphasis added.) In *Dupree v. Dupree,* 156 Fla. 455, 23 So.2d 554 (1945), the Florida Supreme Court reversed the judgment of a divorce court which had declined to award a special equity to the wife although the record showed without dispute that she had contributed substantially to the assets of the couple. The Supreme Court drew a distinction between alimony, which expires upon the death of the husband, and an award of an interest in the estate which survives the husband's death. The court's decision was based upon the earlier Florida cases of *Carlton v. Carlton,* 78 Fla. 252, 83 So. 87 (1919) and *Engebretson v. Engebretson,* 151 Fla. 372, 11 So.2d 322 (1942).

The wife's special equity interest in Florida differs materially from the interest at issue in *United States v. Davis.* There, the thousand shares of stock awarded to the wife were given under the terms of a property settlement in which the wife expressly relinquished all of her marital rights. As noted by the Supreme Court,

[T]he then Mrs. Davis agreed to accept this division "in full settlement and satisfaction of any and all claims and rights against the husband whatsoever (including but not by way of limitation, dower and all rights under the laws of testacy and intestacy) . . . .."

370 U.S. at 66–67, 82 S.Ct. at 1191. Nothing in the Delaware law appears to create an interest such as the "special equity" recognized in the Florida cases.

The taxpayer points to the inchoate character of the wife's interest and thus equates her situation with the corresponding party in *Davis.* She says that "if the wife contributes labor or services which are significant in the acquisition of property by the husband she may be entitled to a special equity in the property upon divorce." As we read the Florida cases, they hold that, given the contributions of the wife, the divorce court *must* grant the special equity. In *Dupree,* the Florida Supreme Court reversed the judgment of the divorce court which had refused to make such an award but had granted the wife alimony.

We conclude that the Florida divorce court decree awarding the special equity to the wife in this case constituted a division of existing property interests, and it did not constitute a taxable event to the husband. His basis, and thus hers, continued to be the amount he paid for the land when purchased.

The judgment is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.